## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Lisa Rudnicki, having been duly sworn, do hereby depose and state as follows:

### I. INTRODUCTION

1. I am a Special Agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and have been so employed since February, 1996. In that capacity, I investigate violations of the federal firearms statutes and have participated in numerous investigations relating to the unlawful possession of firearms and ammunition.

2. Based on my training and experience, I am aware that Title 18, United States Code, Section 922(g)(1), makes it a federal offense for any individual who has previously been convicted of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition in or affecting interstate commerce. Having so stated, I make this affidavit in support of a complaint charging an individual named **SAMUEL DIXON** with being a felon-in-possession of a firearm and ammunition in violation of that statute.

3. The information set forth in this affidavit is based on my own investigation, information provided to me by officers of the Boston Police Department ("BPD"), and other sources. In submitting this affidavit I did not include each and every fact known to me concerning this investigation, but only facts that I believe are sufficient to establish probable cause in support of a criminal complaint and the issuance of an arrest warrant charging **Samuel Dixon** with violating Section 922(g)(1) of Title 18 of the United States Code.

### II. BACKGROUND

4. On February 11, 2011, members of the BPD's Area B-2 Drug Control Unit ("DCU") obtained from the Boston Municipal Court both (1) a search warrant for the person of **Samuel Dixon**; and (2) the premises located at 12 York Street, Apt. #1, Dorchester,

Massachusetts ("the Target Premises"). That two warrants were based on a drug investigation in which several controlled purchases of crack cocaine had been made from a black male later identified as **Samuel Dixon**.

5. The first warrant authorized the search of **Samuel Dixon** for crack cocaine, as well as any "paraphernalia" associated with the distribution of crack cocaine, all money derived from the sale of crack cocaine, computers and other documents associated with the sale of crack cocaine, and any "personal papers, receipts and/or keys showing occupancy" to the Target Premises. A copy of the warrant and the return for it is attached to this affidavit as Exhibit A.

6. The second warrant authorized the search of the Target Premises for crack cocaine as well as any "paraphernalia" associated with the distribution of crack cocaine, all money derived from the sale of crack cocaine, computers and other documents associated with the sale of crack cocaine, and any "personal papers, receipts and/or keys showing occupancy" to the Target Premises. A copy of the warrant and the return for it is attached to this affidavit as Exhibit B.

7. On the morning of February 16, 2011, BPD detectives and officers observed **Dixon** driving a red Ford Expedition on Washington Street in Dorchester. BPD officers then stopped **Dixon's** vehicle, informed him that they had a search warrant for his person, and executed the search. As a result, they seized $15.00 in U.S. currency, a cell phone, and a set of keys, which were in the ignition of **Dixon's** vehicle when he was stopped.

8. BPD officers then went to the Target Premises to execute the search warrant there. After announcing BPD's presence twice and receiving no response, BPD Detective Mike Ross was able to unlock the door and gain entry to the Target Premises using the keys that he had just seized from **Dixon.** No one else was present in the apartment when BPD made entry.

9. BPD officers brought **Dixon** into the apartment. Detective Ross provided **Dixon** with *Miranda* warnings and **Dixon** said that he understood his rights. Detective Ross then asked him if any drugs were present in the apartment. **Dixon** hesitated, but then said that there were drugs in the top drawer of the dresser in his bedroom. Detective Ross also asked Dixon if there were any firearms in the apartment. **Dixon** replied that there was a .380 caliber handgun either in his closet or in the bathroom in the basement. He added that he moved the gun around a lot, but that it would be in one of those two spots.

10. BPD officers then searched the apartment. In the bedroom closet to which **Dixon** had directed them, they found, among other things, a bag containing a .380 caliber Hi-Point pistol, bearing serial number P820629 and containing eight (8) live rounds of .380 caliber ammunition.[1] BPD officers also located various personal papers in **Dixon's** name in **Dixon's** bedroom, as well as in other areas of the Target Premises.

11. The firearm and ammunition seized from **Dixon's** bedroom were thereafter inspected by the Boston Police Department Ballistics Unit. The firearm was successfully test fired and the items recovered from the firearm were determined to be ammunition.

12. After the firearm and ammunition were recovered, they were examined by ATF Special Agent Mattheu Kelch. S/A Kelch confirmed that the firearm and eight (8) rounds of ammunition were all manufactured outside Massachusetts, meaning that the firearm and ammunition necessarily traveled across a state line or international boundary before being recovered in Dorchester, Massachusetts on February 16, 2011.

13. I have reviewed **Dixon's** criminal record as maintained by the Massachusetts Criminal History Systems Board. It confirms, among other convictions, that **Dixon** was

---

[1] Various drugs, drug paraphernalia and other items were also seized from the Target Premises, all as indicated in the Return included in attached Exhibit B.

convicted in Suffolk Superior Court in November 1988 of Armed Robbery, in violation of M.G.L. chapter 265, § 17. This is a crime punishable by a term of imprisonment exceeding one year under Massachusetts law.

### III. CONCLUSION

14. Based on the foregoing, I have probable cause to believe that **Samuel Dixon**, having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did posses, in and affecting commerce, a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

Lisa Rudnicki
Special Agent, ATF

Date:

Subscribed and sworn to before me this 9th day of May 2010.

LEO T. SOROKIN
United States Magistrate Judge