UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal Action No. 11-10218-JLT |
| | * | |
| SAMUEL DIXON, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM

April 29, 2013

TAURO, J.

I. Introduction

Defendant Samuel Dixon is charged with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Currently before the court is Defendant's Motion to Suppress Evidence [#57]. For the reasons stated below, Defendant's Motion to Suppress Evidence [#57] is DENIED.

II. Background

A. Procedural Background

On June 16, 2011, a grand jury indicted Defendant on one count of being a felon in possession of a firearm and one count of possession with intent to distribute cocaine. The Government subsequently dismissed the drug charge, leaving only the firearm charge.

Defendant previously brought a Motion to Suppress Evidence and Motion for a Franks Hearing [#15], arguing that the search warrants issued in this case were not supported by probable cause and that the court should suppress the fruits of the searches. The court denied the

motion. In doing so, this court concluded that the two warrants at issue, one for Defendant's person and one for premises at 12 York Street in Dorchester, were supported by probable cause.

With the court's permission, Defendant then filed the instant Motion to Suppress Evidence [#57], seeking to suppress statements he made to police while detained during execution of the search warrants. The Government opposes the motion. On March 13, 2013, this court heard oral arguments and testimony. In support of his motion, Defendant offered: 1) copies of the two search warrants; 2) Boston Police incident reports regarding execution of the search warrants; 3) an affidavit by Defendant; and 4) an affidavit by Winfred Meadows-Marquez, Investigator with the Federal Public Defender Office. The Government offered testimony by Boston Police Detective Michael M. Ross and Boston Police Detective Paul Murphy. The parties do not dispute the material facts, and the court found both detectives' testimony credible.

B. Factual Background

Detective Ross has served as a Boston Police Detective since 2007 and has completed numerous training classes, including drug control unit training. He has participated in hundreds of drug investigations with the Boston Police and applied for over two hundred search warrants.

On February 11, 2011, Detective Ross applied to the Dorchester District Court for two warrants, which the court issued that same day. One warrant authorized the search of Defendant's person; the other authorized the search of Defendant's apartment at 12 York Street, Dorchester, Massachusetts. This court's previous Memorandum [#23] discusses Detective Ross's affidavit in support of these warrants in detail. In brief, Detective Ross indicated that a confidential informant ("CI") with whom Detective Ross's unit had worked in the past provided information that a black male was selling crack cocaine in the Dorchester/Roxbury section of Boston. The CI provided a

description of the suspect and the suspect's car, along with the phone number that the CI used to contact the suspect to purchase drugs.

Detective Ross subsequently arranged for the CI to participate in three controlled buys of crack cocaine from the suspect. The first buy occurred a few months before the search warrant application, and the third occurred within days of Defendant's ultimate detention. After each purchase, Boston Police Department officers followed the suspect back to the 12 York Street address. Each time, the CI turned over to officers the substance purchased, and based on his training and experience, Detective Ross believed the substance to be crack cocaine.

After obtaining the search warrant, Detectives Ross and Murphy and additional drug control unit personnel prepared to execute the warrants. They set up surveillance at 12 York Street. Detectives Ross and Murphy then located and stopped Defendant driving on Washington Street, less than one mile from his home at 12 York Street. Detective Ross approached Defendant and ordered him out of the car. He explained the warrant and searched Defendant, taking his keys, including house keys, and cell phone and determining that Defendant did not possess a weapon. The detective testified that he took the keys so that officers could enter 12 York Street without breaking down the door and took the cell phone so that Defendant could not alert anyone to the pending premises search. He also testified that the officers did not finish executing the search of Defendant's person on Washington Street. Conducting the search of a person requires that person to remove articles of clothing so that officers can search them for drugs, as authorized by the warrant. Consequently, officers do not ordinarily execute these search warrants in public.

Officers next transported Defendant to 12 York Street. They used the seized keys to enter the premises and spent approximately five minutes securing the apartment. Officers then brought

Defendant into the apartment. Detective Ross estimated that approximately ten to fifteen minutes elapsed between the time of the initial stop and the time Defendant entered the apartment.

Upon entering the apartment, Detectives Ross and Murphy took Defendant, in handcuffs, to the living room. Detective Murphy observed Detective Ross read Defendant his Miranda warning from a card that Detective Ross carried in his pocket. Defendant indicated that he understood his rights. Detective Ross then proceeded to ask Defendant about the location of weapons and drugs in the apartment, and Defendant responded. He indicated that the drugs were in a bedroom dresser and a gun was either in a toilet bowl in the basement or in the bedroom. Officers searched these locations and found drugs in the dresser and a firearm in the bedroom.

During the premises search, Detectives Ross and Murphy stayed with Defendant and completed the search of his person. They uncuffed Defendant and had him remove some articles of clothing. The detectives did not find any contraband on Defendant's person.

Officers then transported Defendant to the police station. Detective Ross estimated that less than an hour elapsed between the time of the initial stop and the time officers transported Defendant for booking.

## III. Discussion

Defendant claims that his detention constituted an arrest without probable cause. He argues that even if officers lawfully detained him on Washington Street, any justification for detention dissipated after officers seized his cell phone and keys. Since this initial search failed to yield any contraband, he argues, officers no longer had probable cause to detain him.

Defendant also argues that his detention violated the principles established by the United States Supreme Court in Michigan v. Summers, which authorized certain detentions incident to

the execution of a search warrant. Officers detained Defendant almost a mile from his home and then brought him back to the premises to assist with the search. Defendant argues that this violates the Summers principles.

A. Warrantless Arrests

The Fourth Amendment protects "against unreasonable searches and seizures."[1] The constitutionality of an arrest depends on whether, "at the moment the arrest was made, the officers had probable cause to make it."[2] "Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime."[3]

Police may conduct a warrantless arrest in public as long as they have probable cause.[4] "The inquiry is 'not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest.' "[5] "[P]robable cause to *arrest*, 'once formed will continue to exist for the indefinite future, at least if no intervening facts come to light.' "[6]

The Supreme Court has emphasized that the probable cause inquiry is objective.[7] "[A]n

---

[1] U.S. Const. amend. IV.

[2] Beck v. Ohio, 379 U.S. 89, 91 (1964).

[3] United States v. Jones, 432 F.3d 34, 41 (1st Cir. 2005) (quoting United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997)).

[4] Maryland v. Pringle, 540 U.S. 366, 370 (2003) (citing United States v. Watson, 423 U.S. 411, 424 (1976)); United States v. Bizier, 111 F.3d 214, 216-17 (1st Cir. 1997).

[5] Bizier, 111 F.3d at 217 (quoting Watson, 423 U.S. at 417).

[6] Id. at 219 (quoting Watson, 423 U.S. at 449 (Marshall, J., dissenting)).

[7] Devenpeck v. Alford, 543 U.S. 146 (2004); Arkansas v. Sullivan, 532 U.S. 769 (2001); Whren v. United States, 517 U.S. 806 (1996).

arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. . . . '[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'"[8]

This court has already determined that Detective Ross's affidavit in support of the warrant applications provided probable cause to believe a crime had been committed.[9] The March 13th evidentiary hearing confirmed this conclusion. At the time Detectives Ross and Murphy detained Defendant, Detective Ross had coordinated three controlled buys from Defendant of a substance that Detective Ross, based on his training and experience, believed to be crack cocaine. These controlled buys, combined with Detective Ross's verification of information provided by the CI, provided probable cause to believe Defendant had committed a crime.[10] That probable cause did not dissipate when officers found only a cell phone and keys during their initial stop of Defendant because the officers still had probable cause to believe Defendant had already, and recently, committed a crime.[11]

Defendant argues that the detaining officers did not believe that they had placed Defendant under arrest at the time of the initial search. But the officers' subjective belief is irrelevant because

---

[8] Devenpeck, 543 U.S. at 153 (quoting Whren, 517 U.S. at 814).

[9] Memorandum (D. Mass. May 21, 2012) (No. 11-cr-10218-JLT) [#23].

[10] United States v. Materas, 483 F.3d 27, 32 (1st Cir. 2007) (finding probable cause based on one controlled buy); Bizier, 111 F.3d at 219 (finding probable cause based on two controlled buys).

[11] See Bizier, 111 F.3d at 219-20.

"the facts known at the time of the arrest objectively provided probable cause to arrest."[12] That is all the Fourth Amendment requires in this context.[13]

Finally, the court rejects Defendant's footnote argument that the officers should have taken Defendant immediately to police station for booking upon arrest, rather than returning to 12 York Street. Defendant has not directed the court to any cases in support of this proposition. The testimony indicated that less than an hour elapsed between the initial stop on Washington Street and Defendant's transport to the station. This short delay does not rise to the level of constitutional significance.[14]

B. Detention Incident to the Execution of a Search Warrant

Michigan v. Summers[15] established a category of cases in which officers can detain individuals without probable cause to arrest them.[16] Officers executing a search warrant may "detain the occupants of the premises while a proper search is conducted."[17] The Supreme Court most recently addressed this category of cases in Bailey v. United States,[18] which considered

---

[12] United States v. Jones, 432 F.3d 34, 41 (1st Cir. 2005); see Devenpeck, 543 U.S. at 152-53; Whren, 517 U.S. at 813-14; Bizier, 111 F.3d at 218; Goddard v. Kelley, 629 F. Supp. 2d 115, 124-25 (D. Mass. 2009); LaFrenier v. Kinirey, 478 F. Supp. 2d 126, 136 (D. Mass. 2007), aff'd, 550 F.3d 166 (1st Cir. 2008).

[13] Whren, 517 U.S. at 814 ("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent.").

[14] Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 54 (1991) ("*Gerstein* held that probable cause determinations must be prompt – not immediate.").

[15] 452 U.S. 692 (1981).

[16] Id. at 701-05.

[17] Id. at 705.

[18] 133 S. Ct. 1031 (2013).

"whether the seizure of the person was reasonable when he was stopped and detained at some distance away from the premises to be searched when the only justification for the detention was to ensure the safety and efficacy of the search."[19]

Despite Defendant's arguments, Bailey has no relevance to the case at hand. This court need not consider whether Defendant's detention was justified as incident to execution of a search warrant because the officers had probable cause to arrest Defendant. As the Supreme Court made clear in Bailey, "[i]f officers elect to defer the detention until the suspect or departing occupant leaves the immediate vicinity [of the premises to be searched], the lawfulness of detention is controlled by other standards, including, of course, a brief stop for questioning based on reasonable suspicion under Terry or an arrest based on probable cause."[20] Here, the "lawfulness of detention" is governed by the standard for arrest based on probable cause. Because the officers had probable cause to arrest, Defendant's detention was lawful.

IV. Conclusion

Defendant's Motion to Suppress Evidence [#57] is DENIED.

AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge

---

[19] Id. at 1035 (emphasis added).

[20] Id. at 1042.