```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
```

```
_____
                                     )
UNITED STATES OF AMERICA,            )
                                     )
        v.                           )   CRIMINAL ACTION
                                     )   NO. 11-10218-WGY
SAMUEL DIXON,                        )
                                     )
                Defendant.           )
_____)
```

YOUNG, D.J.                                    September 22, 2023

## MEMORANDUM AND ORDER

The defendant, Samuel Dixon ("Mr. Dixon") filed with this Court a motion for compassionate release under 18 U.S.C. section 3582(c)(1)(A)(i), which, following briefing from the parties, this Court denied.  Order Denying Motion for Compassionate Release, ECF No. 195.  Mr. Dixon then appealed the denial of his motion to the Court of Appeals for the First Circuit.  See Notice of Appeal, ECF No. 199.  The First Circuit vacated this Court's judgment and remanded this matter for further consideration and entry of a ruling featuring appropriate explanation for this Court's decision.  Corrected Judgement of USCA as to Samuel Dixon, ECF No. 203.  For the reasons explicated below, this Court denies Mr. Dixon's motion for compassionate release.

## I. BACKGROUND

The Court begins by recalling the relevant facts and path of this case. On September 11, 2013, Mr. Dixon was found guilty by a jury of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. Section 922(g)(1). Jury Verdict, ECF No. 112. Mr. Dixon was sentenced to 220 months in prison. Judgment, ECF No. 135. Currently, Mr. Dixon is to be released on September 30, 2025.

Mr. Dixon went on unsuccessfully to appeal his conviction to the First Circuit. See United States v. Dixon, 787 F.3d 55 (1st Cir. 2015). He also subsequently instituted habeas corpus proceedings but was unsuccessful in securing the relief sought at both the district court and the appellate level. Order, ECF No. 171; Dixon v. United States, 729 Fed. App'x 16 (1st Cir. 2018).

On July 24, 2020, Mr. Dixon filed the instant motion for compassionate release. Mot. Compassionate Release, ECF No. 182. As referenced above, this Court denied the motion, Mr. Dixon appealed, and the case was remanded.

Mr. Dixon, in his motion before this Court, intimated that he, as an individual with hypertension, asthma, hyperlipidemia, a heart murmur, and a BMI of over 35 -- a characterization that meets the medical definition of obesity -- was particularly susceptible to negative risks were he to contract COVID-19. See

generally Mot. Compassionate Release, ECF No. 182.  Mr. Dixon therefore pled that this Court, on the foregoing basis, rule that he had established extraordinary and compelling circumstances mandating that his motion for compassionate release be granted.  Id.  In the span of time between Mr. Dixon's filing of his motion and this Court's writing here, material events have taken place.  Most notably, Mr. Dixon actually contracted COVID-19 in 2020.  Suppl. Mem. Supp. Mot. Compassionate Release, ECF No. 196, 1.  Over time, some of his symptoms abated while others remained.  See Suppl. Mem. Supp. Mot. Compassionate Release, ECF No. 207, 1-2.  In his most recent supplement filed August 2, 2023, Mr. Dixon notified the Court that his health complications still persist.  Id.  Additionally, Mr. Dixon was diagnosed with type-2 diabetes in January 2022.  Id. at 1.  Mr. Dixon has also been vaccinated for COVID-19, id. at 2, and the national Covid emergency that undergirded his initial filings has been declared over.

    Mr. Dixon has served his current sentence without incident.  Id.  No disciplinary reports exist.  Id.  He works full time as a UNICOR employee.  He has completed more than twenty programs, some of which were geared towards reducing recidivism.  Id. at 1, 5.  Were he to be released, he would reside at his niece's home in Georgia.  Id. at 2.

Marshalling the circumstances that favor his case, Mr. Dixon requests the following legal recourse: that this Court issue an order reducing his sentence to time served following a determination that extraordinary and compelling reasons exist for compassionate release under 18 U.S.C. Section 3582(c)(1)(A).

## II.  ANALYSIS

The First Step Act vests this court with the discretion to determine whether extraordinary and compelling reasons exist for the compassionate release of a defendant. United States v. Texeira-Nieves, 23 F.4th 48, 52-53 (1st Cir. 2022). To grant a defendant-initiated motion for compassionate release, three findings must be made:

> [First,] the court must find [] that the defendant has presented an "extraordinary and compelling" reason warranting a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). [Second,] that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," id. § 3582(c)(1)(A). [Third], the district court must consider any applicable section 3553(a) factors, see id., and "determine whether, in its discretion, the reduction ... is warranted in whole or in part under the particular circumstances of the case," United States v. Saccoccia, 10 F.4th 1, 4 (1st Cir. 2021) (alteration in original) (quoting Dillon v. United States, 560 U.S. 817, 827 (2010)).

Texeira-Nieves, 23 F.4th at 52.

The United States Sentencing Commission's current policy statement for compassionate release motions is specific to those brought by the Director of the Bureau of Prisons. United States v. Ruvalcaba, 26 F.4th 14, 19 (1st Cir. 2022). In other words,

it has not been updated following the First Step Act.  The First Circuit has definitively held that district courts are not constrained by the Sentencing Commission's 2018 policy statement in adjudicating prisoner-initiated motions for compassionate release.  Id. at 20.  Nonetheless, the policy statement may be utilized as a non-binding reference.  "Ultimately, ... it is within the district court's discretion — constrained only by the statutory criteria and any applicable policy statement—to make that [individualized assessment of a myriad of factors], case by case."  Id. at 27-28.  A court "may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief."  Id. at 28.  "Though the [§] 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release motion," they "need only be addressed if the court finds an extraordinary and compelling reason favoring release." Saccoccia, 10 F.4th at 8.

   The takeaway is this: a district court, reviewing a prisoner-initiated motion for compassionate release in the absence of an applicable policy statement, may consider any complex of circumstances raised by a defendant as forming an

5

extraordinary and compelling reason warranting relief.[1]  United States v. Trenkler, 47 F.4th 42, 47 (1st Cir. 2022).  "District courts should be mindful of the holistic context of a defendant's individual case when deciding whether the defendant's circumstances satisfy the 'extraordinary and compelling' standard . . . [since] any number of reasons may suffice on a case-by-case basis."  Id. at 49–50 (citing Ruvalcaba, 26 F.4th at 28).

The central thrust of Mr. Dixon's argument is that his health considerations, coupled with the specter of COVID-19, constitute extraordinary and compelling reasons warranting a reduction in his sentence.  This Court is not persuaded.  Mr. Dixon's health conditions are certainly worrying and this Court, in its analysis, by no means underplays them.  Nor does it contend that Mr. Dixon's health conditions do not render him at a greater risk of harm than a person without analogous conditions were Mr. Dixon to contract COVID-19 again.  Moreover, there is no denying that those imprisoned, having been deprived of their liberty and agency and dependent on prison authorities for COVID-19 prevention, are far more susceptible to contracting

---

[1] "[T]he only exception to what may constitute an extraordinary and compelling reason, as made explicit by Congress, is rehabilitation."  Trenkler, 47 F.4th at 47.

COVID-19, if for no other reason than the simple one of unavoidable proximity and contact with other inmates.

It seems, however, that the worst has likely passed, both in terms of the pandemic and of the risk that COVID-19 posed to Mr. Dixon.  The peak of the pandemic is behind us.  Moreover, the scenario that Mr. Dixon feared, that he would contract COVID-19, has already transpired.  Mr. Dixon contracted COVID-19 approximately three years ago.  While Mr. Dixon submits that symptoms of his infection have persisted, the Court does not have before it any convincing evidence that these symptoms, in cumulation with his underlying health conditions, render him at an elevated risk of injury were he to remain incarcerated for the full term sentenced.  There is, of course, a risk of Mr. Dixon being reinfected, albeit perhaps somewhat minimized after Mr. Dixon's first infection and vaccination.  The Court, however, is once again not convinced that reinfection would cause Mr. Dixon injury beyond that which he has already suffered as a result of his first infection.  The Court fully acknowledges that guidance on COVID-19 in terms of risk, reinfection, and injury still varies.  While the specific view of COVID-19 this Court has adopted here may be debatable, it is nonetheless defensible.

### III. CONCLUSION

For the foregoing reasons, this Court does not find the reasons Mr. Dixon has presented extraordinary or compelling enough to require a reduction in his sentence. The Court is, however, sympathetic to Mr. Dixon's health conditions, hopes that they alleviate over time, that Mr. Dixon completes his sentence without incident, and that he returns to society a productive and law-abiding citizen.

Motion, ECF No. 182, denied.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[2]

---

[2] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.